Dear Mr. Chipok:
On behalf of the Volusia Growth Management Commission, you ask substantially the following questions:
 1) Does membership on the Volusia Growth Management Commission constitute an office for purposes of the constitutional prohibition against dual office holding contained in Article II, section 5(a), Florida Constitution?
 2) Do the provisions of section 286.012, Florida Statutes, setting forth voting requirements at meetings of governmental bodies, apply to the Volusia Growth Management Commission?
Question One
Article II, section 5(a), Florida Constitution, provides in part that "[n]o person shall hold at the same time more than one office under the government of the state and the counties and municipalities therein. . . ." While the constitutional provision does not define the term "office" or "officer," the Supreme Court of Florida has stated that an "office" implies a delegation of a portion of the sovereign power to, and the possession of it by, the person filling the office.[1]
The constitutional dual office holding prohibition, however, refers only to state, county, and municipal offices; it does not refer to special district offices. The courts and this office have therefore concluded that the dual office holding prohibition does not apply to the officers of an independent special district. In Advisory Opinion to theGovernor — Dual Office-Holding, [2] the Supreme Court of Florida reiterated that special
district officers are not included within the dual office-holding prohibition, concluding that a member of a community college district board of trustees is not included within the dual office-holding prohibition. Thus, for example, this office in Attorney General Opinion 94-83 stated that membership on the Panama City-Bay County Airport Authority, created as a independent special district, did not constitute an office for purposes of Article II, section 5(a), Florida Constitution. The authority was created by law to perform a limited function, its members were appointed by a diverse group of governmental agencies that had no oversight or control over the functions or actions of the authority.[3]
This office, however, has cautioned that care must be taken in determining the nature and character of a district or authority to determine whether the governmental entity is an agency of the state, county, or municipality such that its officers may be considered state, county, or municipal officers for purposes of dual office-holding. For example, in Attorney General Opinion 84-90, this office considered whether a member of the Volusia County Health Facilities Authority was an officer of the county. While the authority was created and organized under Part III, Chapter 154, Florida Statutes, as a public body corporate and politic, it was created by the county by ordinance or resolution. The governing body of the county appointed the authority members, was empowered to remove the members, and was authorized to abolish the authority at any time. This office, therefore, concluded that the authority was an instrumentality of the county and its officers were county officers. Thus, the constitutional prohibition against dual office holding prohibited the mayor from also serving on the governing body of the county health facilities authority.
Similarly, in Attorney General Opinion 91-79, this office concluded that the Fort Walton Beach Area Bridge Authority, created as a dependent special district within the county, was an instrumentality of the county for dual office holding purposes. Under the act creating the district, the county commission was charged with approving the authority's annual budget and for filling vacancies on the authority.[4]
An examination of the powers and duties granted to the Volusia Growth Management Commission indicates that the membership on the commission constitutes an office. The commission was created by county charter to determine the consistency of comprehensive plan amendments with current comprehensive plans of the county and municipalities located within Volusia County. The commission is composed of voting members appointed by each of the sixteen municipalities located within the county as well as by the county, with nonvoting members appointed by the school board, the St. Johns River Water Management District, and the Volusia County Business Development Corporation. According to your letter, compliance with the council's requirements is mandatory for amending a comprehensive plan. The council is responsible for issuing consistency certificates and you state that the council's determinations "are binding on the submitting government." Thus, the actions taken by the council would appear to be an exercise of the sovereign powers of the state and thus membership of the council would be an office.
As noted above, this office has concluded that independent special district offices are not subject to the constitutional dual office holding prohibition. You have advised this office, however, that the Volusia Growth Management Commission has been designated as a dependent special district.[5] While the county does not appoint all the members of the commission, it was created by the county charter and its powers and duties are prescribed by county ordinance.[6] The commission's budget is approved by and is funded by the county. Thus, as a dependent special district of the county, created by county charter and defined by county ordinance and whose budget is approved and funded by the county, the commission would appear to be a part of county government and its members would be county officers.
You specifically refer to Attorney General Opinion 94-42 in which this office stated that a city commissioner could serve on the Monroe County Career Service Council without violating the dual office-holding prohibition. Members on the career service council were appointed, like the Volusia Growth Management Commission, by various governmental entities within the county. However, unlike the commission, the council, created by special act to review personnel practices and hearing career service personnel complaints of various governmental entities within Monroe County, appeared to be in the nature of an independent special district and thus not subject to Article II, section 5(a), Florida Constitution.[7]
Accordingly, I am of the opinion that membership on the Volusia Growth Management Commission constitutes an office for purposes of the constitutional prohibition against dual office-holding contained in Article II, section 5(a), Florida Constitution.
Question Two
Section 286.012, Florida Statutes, provides:
 "No member of any state, county, or municipal governmental board, commission, or agency who is present at any meeting of any such body at which an official decision, ruling, or other official act is to be taken or adopted may abstain from voting in regard to any such decision, ruling, or act; and a vote shall be recorded or counted for each such member present, except when, with respect to any such member, there is, or appears to be, a possible conflict of interest under the provisions of s. 112.311, s. 112.313, or s. 112.3143. In such cases, said member shall comply with the disclosure requirements of s. 112.3143."
Thus, resolution of your question depends on whether the Volusia Growth Management Commission is a "state, county, or municipal governmental board, commission, or agency." In light of this office's conclusion in the previous question that the commission which is a dependent special district of the county, created by county charter, and whose budget is approved and funded by the county, is a part of county government and its members county officers, the provisions of section 286.012, Florida Statutes, would appear to be applicable.
Accordingly, I am of the opinion that the provisions of section 286.012, Florida Statutes, setting forth voting requirements at meetings of governmental bodies, apply to the Volusia Growth Management Commission.
Sincerely,
 Bill McCollum Attorney General
BM/tjw
[1] State ex rel. Holloway v. Sheats, 83 So. 508, 509 (Fla. 1919);see also State ex rel. Clyatt v. Hocker, 22 So. 721 (Fla. 1897).
[2] 630 So. 2d 1055, 1058 (Fla. 1994).
[3] And see Ops. Att'y Gen. Fla. 71-324 (1971) (member of hospital district's governing body is not an officer within constitutional dual office holding prohibition); 73-47 (1973) (trustee of junior college district may serve as member of parks, planning, and zoning commission), 75-153 (1975) and 80-16 (1980) (legislator may serve as a member of a community college district board of trustees); 78-74 (1978) (municipal parking board member may serve as member of community college district board of trustees); 85-24 (1985) (mayor may serve on a community redevelopment district established by general law); 86-55 (1986) (member of Big Cypress Basin's governing board may serve as city mayor); 94-42 (1994) (city commissioner may serve on a local multi-agency career service authority); 94-83 (1994) (person may serve on airport authority and on school board); 96-84 (1996) (city commissioner may also serve on area housing commission); 01-14 (2001) and 02-83 (2002) (water control district commissioner may serve as city commissioner); 02-22 (2002) and 00-17 (2000) (dual office-holding prohibition inapplicable to positions in independent fire protection district).
[4] Cf. Op. Att'y Gen. Fla. 90-91 (1990), concluding that the Hillsborough County Hospital Authority, created by special act with all powers of a body corporate, whose members are appointed by the Hillsborough County Commission which possesses the power to fill vacancies on the authority, remove members for misfeasance, malfeasance or willful neglect of duty, and approve the authority's budget, was a county agency. And see Inf. to the Honorable Bob Starks, dated March 25, 1997, stating that the Sanford Airport Authority, created by special act of the Legislature as a dependent special district to the municipality, was an agency of the city and thus subject to the dual office holding prohibition.
[5] According to your letter, the commission's budget requires approval by the Volusia County Council, the governing body for the county. The Florida Department of Community Affairs lists the commission as a dependent special district on its Official List of Special Districts, available online at: http://www.floridaspecialdistricts.org/.
[6] From the materials accompanying your request, it appears that the amendment to the charter creating the commission was proposed by county resolution, see history of s. 202.3 of the Volusia County Charter. Sections 90-31 through 90-44 of the Volusia County Code, created by county ordinance, set forth the powers and duties of the commission.
[7] The council, created by special act (Ch. 69-1321, Laws of Fla., as amended), provided for the appointment of four of the council's five members by the board of county commissioners; the county's anti-mosquito district; the Florida Keys aqueduct commission; and the utility board of the City of Key West, with the fifth council member chosen by the four other members. The membership of the council was not identical to that of the governing body of a single county or a single municipality nor were its members appointed by the governing body of a single county or a single municipality. The special act did not provide for removal at will by the governing body of a single county or a single municipality or require approval of the council's budget through an affirmative vote or can be vetoed by the governing body of a single county or a single municipality. Cf. s. 189.403(2), Fla. Stat., defining "Dependent special district" to mean a special district that meets at least one of the following criteria:
 "(a) The membership of its governing body is identical to that of the governing body of a single county or a single municipality.
 (b) All members of its governing body are appointed by the governing body of a single county or a single municipality.
 (c) During their unexpired terms, members of the special district's governing body are subject to removal at will by the governing body of a single county or a single municipality.
 (d) The district has a budget that requires approval through an affirmative vote or can be vetoed by the governing body of a single county or a single municipality."